### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *TECHNOLOGY CAPITAL, LLC, et al.,* | ) | |
| | ) | |
| *Petitioners* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-422-P-H* |
| | ) | |
| *CHRISTIAN RICHARD, et al.,* | ) | |
| | ) | |
| *Respondents* | ) | |

### RECOMMENDED DECISION ON PETITION
### TO COMPEL ARBITRATION

Petitioners, Technology Capital, LLC ("Technology Capital"), a Maine limited liability company, and JOM, Inc., doing business as Chipco ("Chipco"), a Maine corporation, seek to compel respondents, Christian Richard of Montreal, Canada, Qualtech Technical Sales, Inc. ("UbiTrak"),[1] a Canadian corporation with its principal place of business in Montreal, and Qualtech Networks, Inc. ("Qualtech"), a Canadian corporation with its principal place of business in Montreal, to submit the parties' disputes to arbitration before a successor to Charles Harvey, Esq.,[2] pursuant to an arbitration provision contained in paragraph 14 of a settlement agreement entered into by the parties on March 11, 2008 ("Settlement Agreement"). *See* Petition at 5-6.

The respondents agree that the parties' disputes are arbitrable, but contend that the majority are arbitrable before Patrick Coughlan, Esq., pursuant to a different arbitration provision contained in paragraph 17 of the Settlement Agreement. *See* Response of Christian Richard, Qualtech Technical Sales, Inc., and Qualtech Networks, Inc. to Petition To Compel

---

[1] UbiTrak is the assumed name of Qualtech Technical Sales, Inc.  *See* Arbitration Award, Exh. A to Petition To Compel Arbitration Pursuant to 9 U.S.C. § 4 ("Petition") (Docket No. 1), at 2.
[2] Charles Harvey died on February 18, 2009.

Arbitration ("Response to Petition") (Docket No. 4) at 1-2.  They argue, as a threshold matter, that the court should not even decide which disputes are arbitrable pursuant to which provision because the parties agreed in paragraph 17 to have Mr. Coughlan do so.  *See id*. at 1.

Following completion of briefing on the Petition, I held a conference with counsel during which the parties agreed, *inter alia*, that (i) no discovery was necessary, (ii) they did not anticipate any need for an evidentiary hearing, and (iii) Mr. Coughlan is empowered by paragraph 17 of the Settlement Agreement to resolve disputes over the *interpretation* of that agreement.  *See* Report of Conference of Counsel and Order ("Report and Order") (Docket No. 24) at 2.  I directed each side to submit a list of issues each believed required resolution by arbitration, either before a successor to Mr. Harvey pursuant to paragraph 14 or by Mr. Coughlan pursuant to paragraph 17.  *See id*.  I also directed the parties to file briefs addressing (i) the court's authority to decide which paragraph of the Settlement Agreement governs arbitration of the issues in dispute, (ii) which paragraph of the Settlement Agreement, in their view, governs resolution of each of the listed issues, and (iii) a process for replacing Mr. Harvey as arbitrator, in the event arbitration before a successor to Mr. Harvey becomes necessary.  *See id*.

With the benefit of careful review of the initial papers as well as those filed pursuant to my order, I recommend that the court deny the Petition on the basis that the parties empowered Mr. Coughlan to decide, as a threshold matter, which of the Settlement Agreement's arbitration provisions governs which dispute.

## I.  Applicable Legal Standards

The petitioners bring the instant petition pursuant to 9 U.S.C. § 4, a provision of the Federal Arbitration Act that provides, in relevant part, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition

any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

## II. Factual Background

Richard, a Canadian entrepreneur-inventor, is president of both UbiTrak and Qualtech. *See* Arbitration Award at 2. John Kendall is president of Chipco, which has expertise and international licenses for the production and sale of gaming chips and related equipment throughout the gaming industry. *See id*. In 2004, Richard and Kendall agreed to combine the efforts of their companies to develop radio frequency identification technology ("RFID") gaming chips and related gaming technology, with the expectation that the software and products could be marketed to the lucrative gaming industry around the world. *See id*.[3]

Kendall, on behalf of Chipco, and Richard, on behalf of Qualtech, executed a letter of intent by which this plan was to be carried out. *See id*. Chipco advanced money to Qualtech, and development efforts went forward. *See id*.

Money ran out on the project before marketable products were developed. *See id*. Consequently, in February 2005, the same parties executed an Agreement in Principle that provided that Chipco would invest $140,000 in the project in return principally for marketing rights to the technology and 50 percent ownership of three identified patents and "all subsequent patents for the gaming market no matter where filed by Qualtech provided such patents can reasonably be applied to applications conducted in a gaming environment." *See id*. at 2-3. Qualtech, in turn, secured the past and existing financial investment and Chipco's agreement to

---

[3] Richard owns UbiTrak, which in turn owns 90 percent of Qualtech. *See* Arbitration Award at 2. Generally speaking, Qualtech is the research and development component of the company, and UbiTrak owns and markets Qualtech's intellectual property. *See id*.

market the products and to rely exclusively on Qualtech for research and development, sale of inlays, and other services. *See id*. at 3. The parties agreed to a division of future revenues, which they anticipated could be substantial. *See id*.

The development of marketable technology and products proved much more difficult to achieve than the parties had anticipated. *See id*. To secure cash, by April 2005, Kendall executed an assignment of Chipco's "right, title and interest" in the Agreement in Principle to a trust controlled by his brother, William Kendall, for the benefit of Technology Capital, then a newly-formed limited liability company. *See id*. Separately, Richard began, by fall 2005, to discuss an investment in his companies with U.S. Playing Card Company. *See id*. As a result, in November 2005, Richard was unaware of the assignment to Technology Capital, and Chipco was unaware of Richard's discussions with U.S. Playing Card Company. *See id*.

From discussions with William Kendall, who had become substantially more involved in dealing with Richard and began to assert himself as the principal in the relationship with Qualtech, Richard discovered the assignment of rights in the Agreement in Principle to Technology Capital. *See id*. He was unsettled by this, sent the assignment to an attorney, and eventually delivered a notice of termination of the Agreement in Principle to John Kendall. *See id*. at 3-4. Following the delivery of the termination notice, he entered into a letter of intent with U.S. Playing Card Company for RFID chips and gaming technology, including patents ostensibly conveyed by the Agreement in Principle. *See id*. at 4. UbiTrak also entered into certain arrangements for gaming chip technology with Eurasiatrak, an entity in which Richard and persons associated with him had interests. *See id*.

On February 27, 2006, Technology Capital and William Kendall, in his capacity as trustee of The Kendall 1987 Revocable Trust, filed suit against Qualtech in the Maine Superior

4

Court.  *See* Docket Record & Verified Complaint and Demand for Jury Trial, *Technology Capital, LLC v. Qualtech Networks, Inc.*, Docket No. AUBSC-CV-2006-00044 (Me. Super. Ct.), attached to Affidavit of David S. Sherman, Jr. (Docket No. 2), *Technology Capital, LLC v. Qualtech Networks, Inc*., Civil No. 06-51-P-H ("2006 Action").  The defendant removed the case to this court.  *See* Notice of Removal (Docket No. 1), 2006 Action.  Qualtech filed a third-party complaint against Chipco.  *See* Answer, Counterclaim and Third-Party Complaint (Docket No. 23), 2006 Action.   Technology Capital and William Kendall amended their complaint, adding as defendants Richard and UbiTrak.  *See* Plaintiffs' Amended Complaint and Demand for Jury Trial (Docket No. 46), 2006 Action.[4]

On September 18, 2007, the parties filed a stipulation for submission of their entire dispute to binding arbitration, stating, in relevant part: "The parties agree to arbitrate and hereby submit for final binding determination by the Arbitrator to be appointed as hereinafter provided the controversies among and between the parties and all of their respective claims as set out in the pleadings of this action."  Stipulation of Parties for Submission of Entire Dispute to Binding Arbitration (Docket No. 113), 2006 Action, at 1.  By order dated September 26, 2007, the court stayed the suit.  *See* Order (Docket No. 119), 2006 Action.

The parties agreed to bifurcate the case and initially try only limited liability issues before the arbitrator.  *See* Petition at 2, ¶ 4.  In his award dated February 1, 2008, Mr. Harvey determined that: (i) the Agreement in Principle was enforceable against not only Qualtech but also UbiTrak, (ii) the assignment of Chipco rights in the Agreement in Principle to Technology Capital was neither invalid nor a breach of that agreement, (iii) the Agreement in Principle constituted an assignment of a one-half interest in the patents subject to that agreement to Chipco, (iv) the purported termination of the Agreement in Principle by Qualtech was

---

[4] Additional defendants were added who have no bearing on this matter.

ineffective, and (v) Qualtech and UbiTrak had engaged in sales activities that violated Chipco's exclusive rights. *See* Arbitration Award at 6-9.

Prior to trying the many and complex damage and liability issues still left unresolved in the case, the parties submitted to mediation with Mr. Coughlan. *See* Petition at 3, ¶ 5. The result was the Settlement Agreement. *See id.* As a result of the successful mediation, the parties submitted to the court, and the court entered, a Consent Final Judgment dated April 7, 2008. *See id.* at 3, ¶ 6; Consent Final Judgment (Docket No. 131), 2006 Action.

The Settlement Agreement, titled "Settlement Term Sheet" and partly handwritten, provided, *inter alia*:

> 6A. The parties confirm that this agreement is legally binding and further agree to prepare a formal document embodying the terms of this term sheet as soon as practicable.
>
> ***
>
> 13. In consideration of the comprehensive settlement which [is] described in this stipulation, and except to the extent set out herein, Plaintiffs, Defendants and Third-Party Defendant each and severally waive all remaining unresolved claims and requests for relief against or among each other set out in the pleadings of this action, and a dismissal of all such claims without prejudice shall be entered as part of the final judgment in this case.
>
> 14. In the event Defendants, or any of them, shall default in the performance of their obligations under the Agreement in Principle, or as additionally set out herein, after notice and an opportunity to cure, then Plaintiffs and Third-Party Defendant JOM, Inc. shall be entitled to make claim against any or all of Defendants for all claims, damages and relief waived herein. Any such claims shall be resolved by binding arbitration conducted in Maine pursuant to the United States Federal Arbitration Act by Charles Harvey Esq. or, in the event he is unavailable or unwilling, by another arbitrator agreed by the parties or appointed by the United States District Court for the District of Maine. The statute of limitations with respect to the claims dismissed under paragraph 13 above is tolled for 2 years from the date hereof.
>
> ***

17.  Any dispute over this settlement or written terms of the typed agreement shall be submitted to Patrick C. Coughlan for binding arbitration.  The arbitrator may assess fees and costs.

Settlement Agreement, Exh. B to Petition, ¶¶ 6A, 13-14, 17.  No formal document embodying the terms of the Settlement Agreement has been executed by the parties.  *See* Petitioners' Brief on Petition To Compel Arbitration ("Petitioners' Brief") (Docket No. 28) at 5; Response to Petition at 2.

## III.  Discussion

The respondents argue that, "[a]s a threshold matter, the Court should reject the Petition because there has been no refusal to arbitrate and because the Settlement Term Sheet . . . executed by the parties on March 11, 2008, expressly provides that all disputes regarding the settlement or the written terms of the settlement agreement 'shall be submitted to Patrick C. Coughl[a]n for binding arbitration.'"  Response to Petition at 1.  They reason that:

1.  The report of the conference of counsel held in chambers on January 20, 2009, reflects that the parties agreed that "Mr. Coughl[a]n is empowered by paragraph 17 of the Settlement Agreement to resolve disputes over the interpretation of that agreement."  Brief of Respondents, Submitted Pursuant to the Court's Order Dated January 20, 2009 ("Respondents' Brief") (Docket No. 27) at 1; *see also* Report and Order at 2.

2.  The parties agree that all of the issues they have presented to the court are subject to arbitration pursuant to either paragraph 14 or paragraph 17 of the Settlement Agreement.  *See* Respondents' Brief at 1-2.  They disagree only about which paragraph applies, which "is clearly a disagreement regarding the interpretation of the Term Sheet" and accordingly must be submitted to Mr. Coughlan.  *See id.* at 2.

3.      In similar cases in which there was no dispute that a matter was arbitrable, courts have held that disputes over the particulars of the arbitration procedures to be undertaken should be resolved by the arbitrator rather than the court.  *See id*. (citing *Bressette v. International Talc Co*., 527 F.2d 211, 216 (2d Cir. 1975); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp.2d 469, 471-72 (S.D.N.Y. 2005).

The petitioners correctly point out that *Bressette* and *Blimpie* do not help the respondents. *See* Petitioners' Reply to Respondent[s'] Brief ("Petitioners' Reply") (Docket No. 29) at 2-3.  In *Bressette*, the *court* decided which of two conflicting arbitration provisions applied.  *See Bressette*, 527 F.2d at 216.  In *Blimpie*, on the strength of the Supreme Court's decision in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), the court held that the question of whether one arbitration proceeding should be consolidated with another was a "procedural" issue properly addressed to an arbitrator rather than the type of "gateway" issue that the parties presumptively would have expected a court to decide.  *See Blimpie*, 371 F. Supp.2d at 473-74; *see also Green Tree*, 539 U.S. at 452 (presumption exists in "limited circumstances" involving certain "gateway matters," such as whether the parties have a valid arbitration agreement and whether a concededly binding arbitration clause applies to the claim in issue, that the parties intended courts, not arbitrators, to decide those matters; however, that presumption does not extend to procedural questions such as "what *kind of arbitration proceeding* the parties agreed to[,]" which presumptively are not for the court, but for the arbitrator, to decide) (emphasis in original).

In this case, as the petitioners suggest, the threshold question is presumptively a "gateway matter" for the court rather than a "procedural" issue: which of two conflicting arbitration provisions applies to the particular disputes in issue.  *See* Petitioners' Reply at 2-3; *see also, e.g., Awuah v. Coverall N. Am., Inc*., 554 F.3d 7, 10 (1st Cir. 2009) ("[W]hether an issue is subject to

arbitration under an agreement containing an arbitration clause is itself presumptively a matter for the court to decide before ordering arbitration."); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) ("Whether a claim falls within the reach of a particular arbitration clause is a question for the district court to determine initially as a matter of law.").

Nonetheless, the analysis does not end there.  "[T]his general rule can be qualified by agreement of the parties."  *Awuah*, 554 F.3d at 10.  "[W]here the parties have themselves 'clearly and unmistakably agreed' that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that this issue is to be decided by the arbitrator."  *Id.  See also, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter[,]" albeit with the "important qualification" that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (citations and internal punctuation omitted) (emphasis in original).

Parties need not necessarily have expressly stated that disputes over arbitrability are committed to an arbitrator for that intent to be clear and unmistakable.  *See, e.g., Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) ("[E]ven absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a broad grant of power to the arbitrators as to evidence the parties' clear intent to arbitrate issues of arbitrability.") (citation and internal punctuation omitted); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005) ("When an arbitration clause is so broadly worded that it encompasses disputes over the

scope or validity of the contract in which it is embedded, issues of the contract's scope or validity are for the arbitrators.") (citation and internal punctuation marks omitted).

In this case, the parties empowered Mr. Coughlan to resolve, by binding arbitration, "[a]ny dispute over" a settlement that encompassed two separate, potentially conflicting, arbitration provisions.  Settlement Agreement ¶ 17.  The parties have stipulated, as is in any event apparent, that paragraph 17 vested in him the power to resolve disputes over interpretation of the Settlement Agreement.  *See* Report and Order at 2.  One cannot interpret a settlement agreement without resolving any potential clash over which of two arbitration provisions within that agreement applies to a given dispute.  The question of which arbitration provision applies is *itself* a "dispute over [the] settlement[.]"  Accordingly, the parties clearly and unmistakably empowered Mr. Coughlan, rather than the court, to decide the threshold arbitrability issue.  The court must respect that choice.  *See, e.g., Anderson*, 2005 WL 1048700, at *4 ("When a court concludes that the parties clearly empowered an arbitrator with [the authority to decide the question of arbitrability], . . . it would defy logic, tread on the prerogative of the arbitrator, and deprive the parties of their contract if a court were then to turn around and decide this very issue itself.").[5]

## IV.  Conclusion

For the foregoing reasons, I recommend that that the Petition be **DENIED**.

---

[5] The petitioners argue that a ruling on arbitrability by an arbitrator who formerly served as a mediator in the same matter would raise ethical issues and is vulnerable to challenge on appeal.  *See* Petitioners' Brief at 13-14.  They cite an unpublished Ohio state court case for the proposition that preconditions necessary to demonstrating the parties' consent to using the same mediator/arbitrator are not here present.  *See id.* at 14.  They cite no caselaw indicating the existence of such preconditions in Maine or as a matter of federal arbitration law, and I find none.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 15th day of April, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
